Mr. Markey. Markey. May it please the court, Nicholas Markey on behalf of Philip Gonzalez, I would reserve one minute of rebuttal. Your honors, this case comes on from Mr. Gonzalez's conditional plea. Mr. Gonzalez entered a plea of guilty to possession of an unregistered firearm. In the plea agreement, he was allowed to appeal the motion of his denial of his motion to suppress. For purposes of this argument, your honors, we would submit on that issue. I believe the briefing is appropriate. The other issues raised in this appeal go towards the sentencing. In the plea agreement, the parties had agreed that the base offense level would have been a 20. That would have been, I believe, 16 points or 18 points was the base offense level for possession of the unregistered firearm and a two-point increase for obliteration of the serial number. The PSI came back and added an additional four points for use of a firearm in connection with another illegal activity or a drug crime. In addition, as the record reflects, while Mr. Gonzalez was pending sentencing, he unfortunately was charged in Franklin County with simple possession of marijuana. He also, I believe, was charged in Benton County with a similar charge of simple possession of marijuana. Neither of those cases at the time of sentencing had been resolved. They were both still pending. Mr. Gonzalez objected to the four-point increase for use of a firearm in connection with another felony, and he also objected to not getting his three points for acceptance of responsibility. It is our position, Your Honors, that as the record reflects, when the officers executed their search warrant on the apartment, they found two safes which were locked, which had handguns in them, and additionally, they found a shotgun under the bed. Now, as Mr. Gonzalez had stated at sentencing and at his plea, the shotgun that was found under the bed was inoperable. Does that make a difference? In this case, I think it would, Your Honor. The government must show that the firearms emboldened or facilitated the drug crime. With regards to the two handguns or three handguns that were found in the safes, those were locked, and I believe one safe was in the bedroom, one safe was in the kitchen. As to the shotgun, it was found under the bed, and as we indicated, it was inoperable. The case law, I think was the same. Where were the drugs found? The drugs were also found in the safes. Weren't there drugs in the bedroom? There were in the safe, Your Honor. Were all the drugs in a safe? Yes, Your Honor. One of the safes was in the bedroom. That's correct, and there was another one in either the kitchen or the living room. Either they were sort of a combination lock or a key lock? I believe they were a combination lock, Your Honor. I think the case law is clear. I don't think the government and I have a different opinion on the case law. It clearly indicates that it must embolden the individual in the facilitation of his crime. Here, the weapons. Knowing that he had a gun close to his drugs, doesn't that embolden him under the law? No. If you look at the case law that was cited by the government, all of the cases cited by the government that supports their position of having a gun in possession with regards to guns, all of those cases they cite in their briefs deal with individuals that are in cars, individuals that are making deals, doing transactions with guns, stuff between car seats and the console. No. The evidence here was this guy dealt from his house or his apartment. That's a conclusionary statement, Your Honor. The manager of the apartment said that there was increased traffic and increased individuals. However, there was never any direct testimony or direct identification of dealings going on. There was no confidential informant that directly made a sale with Mr. Gonzales. Well, there was this marked money that went up there and came out. I would concede there was marked money, but there's no indication that the transactions were taking place at the residence. Well, don't we know that he went to the third floor? No, we don't. I think we knew he went to the third floor that we didn't know which apartment he went to. The testimony at the hearing level was where officers observed the third party, shall we say, go to the landing and then go upstairs. Nobody actually saw him get to the third floor or what door he went to. Well, but they saw us. The officers saw the confidential informant meet Burnett. They followed the two to Pasco. Burnett told the confidential informant that he was going to go see Phil. The confidential informant then remained in the car, and Burnett entered the breezeway of Building E and walked up two flights of stairs. Correct. Okay, that's the third floor. Another officer heard Burnett knock at the door. The officers saw Burnett exit the breezeway and return to the car, and the confidential informant turned the marijuana over to the officers after Burnett had given it to him. Now, it seems to me that's pretty straightforward. I don't know where we go after that. Then we find the complex manager says, oh, there's been a lot of people going in and out of E3029. It's the residence of Phil Gonzalez. I mean, I guess I'm having a tough time with your argument with that kind of background on it. Well, I would concede that it could be implied that. Again, as noted, we don't have any direct evidence of directly an officer observing, but I would concede that it circumstantially could be found out. Well, and then we have this firearm under the bed. You're suggesting the drugs are in the safe, but they're in the bedroom, and we've got firearms in the safes, even under the bed and near the drugs. Based on Polanco and Rudin, it seems to give some idea that it's emboldening. I would disagree on that. Only because they're in cars? Yes, in cars in the vicinity. What if it had been in the bedroom just standing on a wall right there, you know, just an open? If it would be standing on a wall? You know, placed up against the wall. Next to the safe? Well, no, just in the bedroom, right? You know, real handy. You just walk over and pick up the gun. If it were handy, I would say then my argument would have less bearing. But here it's not handy. It's under a bed. The other ones are in the safe. Is it a twin bed, a king bed, a full bed? That we don't know, Your Honor. There is no testimony as to the size of the bed or the room. A-bed? It was A-bed. And as I indicated, again, the case law seems to indicate it must be some way to facilitate it. Now, you may say, well, Burnett went out, got the drugs, came down. Well, there was no other testimony of other deals that he was actually running out of. Well, the testimony of the landlady, I think, certainly can be taken into account. Lots of foot traffic. It can be taken into account as to lots of foot traffic. I guess I'm more interested in the arrests for possession. He was an addict, wasn't he? He was, Your Honor. And he wasn't taking the ñ he didn't have the drugs for sale. He had it for his own use, probably. That's correct, Your Honor. There was a hearing on his revocation of his pretrial release. The one instance was a pretrial service probation officer came to do a routine check, found a small amount of marijuana in a jar in the bedroom. When he was subsequently arrested for that charge and taken to Benton County Jail, in the course of the search of his person, they again found a small additional amount of marijuana. As was clear to the probation department and to the defense, he did have a drug problem. As the court can see, he suffered a ñ He was shot in the head. He was shot in the back of the head, Your Honor, on Highway 395 in Pasco, Washington, the incident of a road rage incident. As indicated in the submissions we made, that injury caused him physical pain and emotional pain. He had a continual ringing of the ears. His family provided documentation that after that his behavior changed and his actions and his attitudes, he wasn't as responsible as he had been. However, when they got the search warrant and went up there, they didn't just find a little marijuana use, 10 packages of cocaine, packaging materials, heels, currency. I would concede that, Your Honor. I just have one last question for you. What was the difference in the sentence with the addition of the four points for the gun? Your Honor, the four points put Mr. Gonzales' range at level 24 without exception. Which corresponded to what range? 51 to 63 months. We had argued that his range should have remained at an offense level 17 of 24 to 32. I concede that the court did grant a departure under 3553 to 41 months. Right. And the court did do that. Okay. Thank you, Your Honor. Thank you. We'll hear from the government. May it please the Court. My name is James Taggarty. I'm an assistant to the United States Attorney in the Eastern District of Washington assigned to Yakima office, and I was the assistant who handled this matter. I want to clarify something, and I apologize to the Court that I don't have the documents in front of me, but I believe that the reference to the finding of the firearms in the bedroom by Mr. Markey was incorrect. I think if you go to Supplemental Excerpt of Record, page 14, you will note in there that specifically in that identification of the exhibits that were found at that time, that the drugs were found in the safe. The other, the firearms themselves, were long rifles. They were found outside of the safe. I believe they were in the closet, but they were outside the safe. I believe that the sawed-off shotgun, which formed the basis of the unregistered firearm count, was found underneath the bed. And I think the answer to the question, does inoperable mean that it doesn't come, and I think the answer is no, it has no bearing on it. Certainly, if you pull a sawed-off shotgun during the course of a drug transaction, the person on the other side is certainly going to be looking at that as the sawed-off shotgun and is certainly not going to be negotiating in his own mind, is it operable, is it not operable, am I really in danger, am I not, is he faking it, what he's going to look at is the sawed-off shotgun. But your position that just mere presence of a gun is sufficient to meet the emboldening standard, then what's different here? What is really emboldening about the gun under the bed? The emboldening about the gun is the presence of all of the firearms in the room and that the drug activity in that house, but for the marijuana, if you remember in the facts when they enter the residence there are a number of individuals there. One of those individuals is in the kitchen, and in front of him is a supply of marijuana laid out in that. Then at that time the defendant says, this is my apartment, everything in this apartment is mine. So he admits, he starts the process by admitting that everything is there. They enter his room, and in his room he has all of the paraphernalia, he has all of the supplies, he has the currency, he has the baggies, he has the scales, all for his drug trafficking activities. Now, Mr. Markey indicates, well, there's no direct evidence of buys from him. Well, we know that circumstantially that Mr. Burnett, the middleman, went to this apartment. He came out with drugs. He delivered those drugs. We know that we have that circumstantial evidence. We also have the testimony of the manager. The manager says there was a lot of foot traffic in and out of this apartment, and she claimed or provided the officer with information that they had observed drug transactions from the defendant to others. So now we have drug trafficking activity. We have all the indicia of drug trafficking. We have a middleman going to that apartment and coming back out with the drugs. We get into the house, and in the defendant's room, his secured room, locked in a safe that he has accommodation to, we have all of his drugs, and surrounding that in his room where this is occurring, he has multiple firearms, including the sawed-off. We could have used any of those firearms but the sawed-off because of the nature of that and because the fact is at that point in time Mr. Gonzalez was not a convicted felon, therefore a straightforward 922-G1 possession would not have applied to him. It had to be because his shotgun was too short? Yes. Yeah. The barrel length was cut and it was shorter than is permitted both in overall length and barrel length. And in this case, the defendant has made a number of arguments, and we agree with Mr. Markey, the issue of the probable cause for the search warrant is clearly defined by the four corners of that document. I think the arguments are sufficient, and I think we've provided a copy in our supplemental experts of the search warrant and the reports, and you outline those, you're going to find probable cause. We'd also challenge the issue of whether there was a material misrepresentation or omission and indicate that we believe in reviewing that, and as we've set forth in a brief, the defendant has failed to meet the standard of showing that it was material, showing that it was misrepresentation or omission, making an offer of proof or identifying that there was any reckless disregard by the affiant. Mr. Markey, with respect to the issue number two, indicated that the government's cases that we cited were that these cases referred to possession of firearm in a car, and there are no cases that say because it's in a car versus a house, there's some distinguishing there. It is the conduct of the individual. In those cases, this individual was doing drugs and wasn't always in contact, like in Polanco, he wasn't always in contact with the vehicle from which he was dealing drugs. He was going away from the vehicle, making the deliveries and coming back, and this court has held that that was sufficient because he could always go back. Same thing with Mr. Gonzalez. He's dealing from his house. Now, whether he deals it in the bedroom or goes out into the living room or goes out on the front porch and delivers it, he always has that same ability, same as the defendant in Polanco, to go back to that sort of the center of his drug activities where he had his firearms, and that's what we believe is the thing that keys that enhancement and the appropriateness of the enhancement in this case. He also argues that the court abused his discretion in failing to depart, which is an interesting argument in that the fact is the court did depart, and I think it's clearly that the court considered all of the issues raised by the defense about the shooting that he was shot in a drive by, his family history, and the court did, in fact, depart off of that. The government's position is that the defendant doesn't or this can't be reviewed because it's a discretionary decision. It's clear from the record that Judge Nielsen in this case was aware of his ability to depart. He considered all the factors and chose not to depart to the degree that the defense had requested, but rather just give this small. If he had given the points for responsibility, what difference would that have made in the basic calculation under the guidelines? He would have been a rough guy. He would have been a 21. If you take the four levels, he would have been a 21, and I don't remember what his criminal history category, and I apologize. I don't have what range it would have been. And going to the acceptance of responsibility, we have cited to a number of the cases on this, and it clearly is within the discretion of the district court to find that conduct occurring after the entry of a plea undermines the whole concept of that, of the acceptance of responsibility. In this court, the court specifically did that. They said, you plead guilty, but you go out and this is a delivery, it involves drugs, and you go out and you get arrested for possession in two counties. So there was two counts of an arrest. In fact, Mr. Gonzalez was arrested, released, and arrested again on another. And that's what the court said you didn't accept. And I think the cases that are cited. My concern about that is that he had been shot in the head. He was an addict, and he was probably using for pain as much as anything else. He tried to accept responsibility for shouldn't be dealing drugs, but he's using them because of his terrible condition. And I don't want to disagree with you, but I don't think there's any evidence on the record that would establish that that shooting caused Mr. Gonzalez to become or was an addict, or that his ability to see right and wrong and to make decisions about his life, there's no evidence of that. So can an addict just turn it off, say, I'm no longer using, period? I don't know that he ever established that he was an addict. I don't know that there's anything in the record. I would concede that he was an addict. No, no. I would concede he was delivering drugs, but I don't know that I would concede he was an addict. But I certainly don't think there's anything in the record, there was nothing presented that would establish that Mr. Gonzalez in any way was impaired in his ability to know that drug trafficking, drug delivery was wrong, or that his conduct had the consequences of potentially, you know, an arrest, an incarceration. And I think that the argument to be made for the. . . He pled, which usually is enough to show. . . He did plead, and I would agree, but this Court has also indicated that you can make and do conduct after you plead that's inconsistent with that, and I think that's what the Court decided. Thank you. Okay. Thank you. I believe you had a second or two. A minute. A minute. Thank you, Your Honor. Very briefly. The government maintains on the acceptance of responsibility the fact that Mr. Gonzalez was found dealing drugs, and then subsequently, while he was out on release pending sentencing, he had possession crimes that they equate to be the two same thing. We're not saying that. I believe the record is clear, and the U.S. attorney at the time of sentencing admitted that he had a drug problem, and I think the filings were clear on that. The fact that Mr. Gonzalez had a drug problem and he was an addict and he did get the possession crimes doesn't negate the fact that he accepted responsibility  But what difference would it make in the sentence? What difference would it make? Yeah. Excuse me. I think, Your Honor, if he was given acceptance of responsibility and didn't have the four-point enhancement, his range would have been 24 to 32 months. If the four points applied and he was given acceptance of responsibility, he would have gone to, I believe, 46 to 57 months. So he would have gotten knocked out. But I do concede that the court did grant him. He got a 41 month sentence. He got a 41. Yes, he did. Thank you. Thank you. Thank you. We appreciate your arguments. The matter will be submitted.
judges: Fletcher, Paez, Smith